[No. 22354.  Department One.  September 22, 1930.]

FRED STANKEY, *et al., Respondents,* v. ANNETTE GODWIN, *Appellant.*[1]

*Charles H. Paul,* and *H. W. Marshall,* for appellant.
*J. E. Stone,* for respondents.

BEALS, J.—Plaintiffs, Fred and Matilda F. Stankey, being the owners of a farm in Cowlitz county which was subject to a mortgage upon which there was due

[1]Reported in 291 Pac. 725.

almost $3,000, agreed, by contract of conditional sale, dated August 12, 1927, to sell the farm, including the land, stock, farm machinery and some farm produce, to defendant, Annette Godwin, for the sum of $11,-000; of which $262.50 was paid in cash; the remainder of the purchase price to be paid, first, by the assumption of the mortgage, the balance, with interest at six per cent (payable monthly for the first two-year period), $1,000 on or before August 12, 1928, $3,000 on or before August 12, 1929, and thereafter $250 and interest semi-annually until the balance should be fully paid; defendant, in addition, to pay seasonably all taxes and assessments, and to keep the improvements situated on the property insured against loss by fire in a specified sum.

The contract provided that, in the event that the buyer (defendant) should default in any of the covenants contained in the contract by her to be performed, or should fail to make the payments called for by the contract at the times specified—time being declared to be of the essence of the agreement—plaintiffs (the vendors) might declare the contract null and void. It was stated in the contract that the payment of $3,000 due thereunder August 12, 1929, "is secured by chattel mortgage of even date herewith." The contract also provided for the delivery of a deed to defendant when the purchase price should be fully paid.

It appears from the testimony that, at the time the contract was executed, defendant delivered to plaintiffs her promissory note for $3,000, providing that the interest thereon should be paid monthly, and, if not so paid, that the whole of the principal sum should become immediately due and payable at the option of the holder of the note. The payment called for by

this note is the same payment as that called for by the contract to be made on or before August 12, 1929.

The contract was recorded as a real estate contract in the office of the auditor of Cowlitz county August 17, 1927, and was filed in that office as a contract of conditional sale of personal property March 13, 1928. Possession of the property was, at the time of the closing of the deal, delivered by plaintiffs to defendant, who thereafter made certain payments of interest and two small payments on account of the principal. Defendant sent to the bank, in which plaintiffs had deposited the contract for collection, a check for the payment of interest due July 12, 1928, which check the bank returned to defendant for the reason that the same was made payable to plaintiff Fred Stankey and not to the bank.

January 14, 1928, an installment of something over $100 had fallen due upon the mortgage against the premises, which mortgage defendant had assumed, and, to protect the premises from foreclosure, plaintiffs had paid this item May 14, 1928.

On or about August 13, 1928, plaintiffs called on defendant on the premises which they had agreed to convey to her, where she was living, and demanded payment of the sum of $4,182.18, with interest, which amount they then claimed to be due to them. During this visit, a conversation occurred between plaintiffs and defendant concerning which the testimony is in dispute, defendant stating that plaintiffs then orally agreed with her that she should have a thirty-day extension of time within which to pay the sums then due upon the contract, plaintiffs denying that any such agreement was made, although they admitted that there was some discussion concerning an extension of time which defendant desired.

Within a couple of days after this conversation, this

suit was instituted, plaintiffs, in their original complaint, demanding judgment against defendant for $4,182.18, which amount included, as plaintiffs contended, all sums at that date due on the contract, including the $3,000 note, as to which plaintiffs had exercised their option to declare the same due by reason of the nonpayment of the interest thereon. This complaint was verified August 16, 1928, and filed in the office of the clerk of the superior court on the day following. Coincident with the filing of the complaint, a writ of attachment was issued, under which some personal property was attached to await the result of the action. Thereafter plaintiffs filed an amended complaint, in which the amount for which they ask judgment was reduced to $3,807.68, with interest from August 12, 1928.

Defendant, after demurring to the amended complaint, and the overruling of her demurrer by the court, filed her answer, consisting of a general denial and affirmative defenses, in which she pleaded that plaintiffs had accepted payments of interest under the contract on dates after such payments had fallen due, and had thereby waived their right to strictly enforce the provision that time was of the essence of the contract, in so far as such payments of interest were concerned, and that plaintiffs were therefore required, under the law, to give defendant reasonable notice before they could exercise their option to accelerate payment of the note above referred to. Defendant also pleaded that no greater sum than $600 was then due on the contract, and that plaintiffs and defendant had agreed that defendant should have an extension of thirty days from August 12, 1928, within which to make the payments then due to plaintiffs, and that plaintiffs, in violation of such oral agreement,

commenced this action before the expiration of the thirty-day extension.

Upon the issues so made up, the action was tried to the court sitting with a jury, and a verdict returned in favor of plaintiffs for the sum of $3,807.68, together with six per cent interest from August 12, 1928. Defendant's motions for judgment in her favor notwithstanding the verdict, or, in the alternative, for a new trial, having been denied, the court entered judgment upon the verdict against defendant in the sum of $75.28, without interest, plaintiffs having elected to waive interest on that amount, and for the sum of $3,732.40, with interest at six per cent per annum from August 12, 1928. From this judgment, defendant appeals.

Appellant assigns error upon the overruling of her demurrer to respondents' amended complaint; upon the admission of certain evidence; upon certain alleged improper argument to the jury by respondents' counsel; upon certain instructions given by the court to the jury; and upon the refusal of the court to give several instructions requested by appellant.

Appellant's demurrer to respondents' amended complaint was properly overruled. This matter is not argued by appellant, and we find no error in the ruling of the court on this question.

As to appellant's assignment of error upon the admission of evidence, we find the same, in part at least, well taken. As above stated, respondents neglected, for several months, to file their contract with appellant as a conditional sale contract covering personal property. November 15, 1927, appellant executed a chattel mortgage in the sum of $1,380, in favor of D. J. Elliott, who, it appears from the testimony, was appellant's mother, which mortgage covered personal property therein enumerated, some of which,

consisting of stock and farm machinery, was the identical property which respondents had agreed to sell to appellant by the contract of conditional sale above referred to. The chattel mortgage was filed in the office of the county auditor November 16, 1927, at the request of the mortgagee therein named, and, as at that time the contract of conditional sale from respondents to appellant had not been filed as a contract covering personal property, it will readily be seen that a question might well arise as to whether or not the chattel mortgage to Mrs. Elliott conveyed to her a lien upon such of the chattels covered thereby as were also included in the conditional sale contract from respondents to appellant, superior to the title reserved in favor of respondents.

It does not appear that this question had ever been judicially determined, or that any action or proceeding was pending looking to such determination. On cross-examination of appellant, respondents' counsel interrogated appellant concerning the mortgage to appellant's mother above referred to, and appellant admitted that respondent Fred Stankey had, during the conversation between him and appellant in which appellant claims Mr. Stankey granted her a thirty-day extension, referred to the mortgage executed by appellant in favor of her mother. As part of this cross-examination, respondents' counsel offered in evidence a certified copy of the chattel mortgage from appellant to Mrs. Elliott, which, over objection by appellant's counsel, was received in evidence, the court stating that it was so admitted for the sole purpose of throwing light upon the question as to what the conversation between appellant and respondent Fred Stankey was. Appellant was then further cross-examined concerning the property which she had mortgaged to her mother, and concerning a small addi-

tional amount of personal property which appellant had purchased from respondents at the time of the signing of the main contract.

Respondents cite three decisions of this court in support of their contention that the admission of the chattel mortgage in evidence was proper. These opinions support the proposition that the oral testimony admitted by the court was correctly received, but they do not support respondents' contention that the chattel mortgage itself was admissible in evidence.

We conclude that the trial court erred in admitting in evidence the certified copy of the chattel mortgage above referred to. While the conversation between the parties, concerning which appellant was cross-examined, was material and relevant to the issues which were being submitted to the jury, the chattel mortgage itself was inadmissible as tending to present a collateral issue which was not before the court. Whether or not this chattel mortgage was, in fact and in law, prior to respondents' claim under their contract of conditional sale, was a question which was undetermined at the time of the trial of this action and which could not be decided in this proceeding. The issue between the parties which was being tried was clear-cut and definite: Did or did not respondents orally agree with appellant that she should have a thirty-day extension as to the payments then due respondents upon their contract? Appellant was properly subjected to a searching cross-examination as to what was said by the respective parties in the conversation, in the course of which she claimed that respondents granted her an extension, but the admission in evidence of the certified copy of the chattel mortgage went beyond this matter and introduced into the case a collateral issue, which it must be assumed resulted in prejudice to appellant. Such an ex-

hibit was not necessary for the purpose of telling what the conversation was, as stated by the court, as appellant admitted the making of the chattel mortgage to her mother, and cases in which it has been held that an exhibit was necessary to explain a conversation are not in point.

The unfortunate result of the error committed by the court in admitting this exhibit clearly appears from the improper use made thereof by respondents' counsel in his argument to the jury, respondents' counsel arguing, using the chattel mortgage as a text, that the chattel mortgage to appellant's mother had priority over respondents' claim, and inferentially that appellant had taken an unfair advantage of respondents in executing the chattel mortgage to her mother. Appellant's counsel objected to this line of argument, but did not sufficiently preserve his record in order to base a claim of error thereon before this court, as no request was made to the court to instruct the jury to disregard this portion of the argument, and, when appellant's counsel objected, the court told respondents' counsel to abandon that line of argument. We simply mention this point, in passing, as showing the natural result of the admission in evidence of the certified copy of the chattel mortgage and the result which it must be assumed this exhibit had upon the jury.

We have discussed this matter at length, notwithstanding the fact that the judgment appealed from must be reversed because of an erroneous instruction given by the court to the jury, because we feel that, as the case must in any event be remanded for a new trial, the question of the admissibility of the chattel mortgage in evidence should be now determined. We have, therefore, not considered the question of whether or not the admission of this exhibit, were it

the only error in the record, would call for a reversal of the judgment appealed from, as it might be argued that the admission of the exhibit, while erroneous, was not of itself so prejudicial as to call for a reversal, the matter of the making of the mortgage having properly been gone into extensively on examination of the witnesses for the respective parties.

Appellant assigns error upon the giving of the following instruction to the jury:

"You are instructed that a mere promise or offer on the part of the plaintiffs to give the defendant further time if such promise was made, without a positive agreement on the part of the defendant to pay interest for such time, is a promise without any consideration to support it. And if you find that the plaintiffs gave the defendant further time within which to pay as alleged in the answer, and you do not find that the defendant agreed to pay interest for such time on the money due then you must find for the plaintiffs."

This instruction was erroneous. The obligations, payment of which appellant contended was extended, were written obligations for the payment of money, and, according to their terms, bore interest. It was, therefore, not necessary, in order to constitute a valid consideration for an extension of the time of payment thereof, that appellant, the person liable thereon, make a positive, distinct agreement to pay interest during the extension period, as such an agreement was implied in law and would necessarily follow any agreed extension in which the subject of interest was not expressly referred to. Under this instruction, the jury might well have believed, and indeed should have believed, that, unless appellant positively and directly stated that she would pay interest during the period of the extension, any language which respondents might have used, granting appellant an extension for

the period she claimed, would have been without consideration and not binding upon respondents.

In the case of *Nelson v. Flagg,* 18 Wash. 39, 50 Pac. 571, referring to an extension agreement endorsed on a promissory note, this court said:

"But, treating the question as one heretofore undetermined by this court, we think that there are all the elements of a valid contract to be gathered from the indorsement under consideration. The effect of the indorsement in this case, in the light of the finding that it was at the maker's request and with his consent, was to postpone the time of payment for one year. The consideration flowing to the holder was the implied promise of the maker to pay interest during the full period of the extension at the rate expressed in the instrument; and the promise of the holder to forbear suit for a definite period constituted a good consideration for the agreement upon the part of the maker to pay interest for such full period."

To the same effect are the decisions of this court in the cases of *Commercial Bank of Tacoma v. Hart,* 10 Wash. 303, 38 Pac. 1114, and *Van de Ven v. Overlook Mining & Development Co.,* 146 Wash. 332, 262 Pac. 981. The opinion of the supreme court of Kansas in the case of *Lorimer v. Fairchild,* 68 Kan. 328, 75 Pac. 124, is also in point.

The record was also confused by the contention of counsel for respondents that, in order to constitute a valid extension agreement, appellant must have agreed to pay not only interest on the principal sum, payment of which was extended, but also interest on any past due interest. Such interest might well have been the subject of an express agreement between the parties, but it is not the law that, in order to make an extension agreement valid, the debtor must agree to pay, in addition to interest upon the principal obligation according to the terms thereof or according to the legal rate of interest, or at some agreed rate, an

504

additional amount as interest upon accrued and past due interest.

The judgment appealed from is reversed with instructions to the superior court to grant appellant's motion for a new trial.

MITCHELL, C. J., PARKER, TOLMAN, and MILLARD, JJ., concur.